[Nos. B029403, B029404. Second Dist., Div. Three. May 30, 1989.]

ROXANI GILLESPIE, as Commissioner, etc., Plaintiff and Respondent, v.
CALIFORNIA STANDARD INDEMNITY COMPANY et al., Defendants;
CENTRAL BANK, Real Party in Interest and Appellant.

COUNSEL

Thelen, Marrin, Johnson & Bridges, Randall L. Erickson and Karen M. Andrews for Real Party in Interest and Appellant.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Mark P. Richelson, Deputy Attorneys General, for Plaintiff and Respondent.

No appearance for Defendants.

OPINION

**DANIELSON, J.**—In consolidated appeals, real party in interest and appellant Central Bank (the Bank), appeals from orders of the superior court directing the Bank to turn over to plaintiff and respondent Insurance Commissioner of the State of California (Commissioner), as liquidator of defendants California Standard Indemnity Company (California Standard) and Great Global Assurance Company (Great Global), funds evidenced by certain certificates of deposit, and denying the Bank's motion for leave to exercise its alleged security interest therein. The Bank challenges the propriety of the trial court's use of the summary order to show cause proceeding to take funds evidenced by the Bank's certificates of deposit, as well as the applicability of Insurance Code section 1031, subdivision (b), prohibiting any setoff by a person to whom the obligation of the person in liquidation was sold or transferred, to the proceeding, urging the statute, if applicable,

violates various constitutional provisions.[1] The Bank also complains that the court failed to recognize and protect its assertedly valid banker's lien on the deposit account balances and certificates of deposit. We affirm the orders.

## FACTS AND PROCEDURAL HISTORY

The Bank is engaged in the business of insurance premium financing (Ins. Code, § 778 et seq.),[2] advancing premium payments to insurers on behalf of insureds, who then make periodic repayments to the Bank. The Bank obtains a power of attorney from each such borrower to exercise that person's right to cancel the policy in the event the borrower defaults under the loan, as well as an assignment of the insured's right to receive a return of unearned premium upon cancellation. The Bank claims it looks to the latter as collateral, and is therefore interested in the financial strength and stability of the insurers issuing policies for which it makes premium loans.

According to the Bank, both California Standard and Great Global were notified at some time in the past that they had reached the limit of premiums the bank would finance based on their general creditworthiness, and would be required to deposit funds subject to the California banker's lien and right of setoff, or pledged by a third party, if they desired the Bank to continue financing their premiums.

In response to this notice, California Standard deposited $100,000 in the Bank, in an account evidenced by certificate of deposit No. 92373; among the deposits made by and on behalf of Great Global was its deposit of $300,000 in an account evidenced by certificate of deposit No. 92368, and $200,000 in an account evidenced by certificate of deposit No. 92384. The first of the Great Global accounts was reduced by $100,000 released to the Commissioner, and a new certificate of deposit, numbered 92400, in the amount of $200,000, was issued to Great Global. The Bank retained possession of the certificates numbered 92373 and 92400, and had them in its possession when California Standard and Great Global were placed in

---

[1] Insurance Code section 1031 provides, in part: "In all cases of mutual debts or mutual credits between the person in liquidation under Section 1016 and any other person, such credits and debts shall be set off and the balance only shall be allowed or paid, but no set-off shall be allowed in favor of such other person where any of the following facts exist: . . . (b) The obligation of the person in liquidation to such other person was purchased by, or transferred to, such other person."

[2] "Premium financing" is defined in Insurance Code section 778 as "engaging in the business of advancing money, directly or indirectly, to an insurer or producer at the request of an insured pursuant to the terms of a premium finance agreement, wherein the insured has assigned the unearned premiums, accrued dividends, or loss payments as security for such advancement in payment of premiums on insurance contracts . . . ."

conservatorship on September 5, 1985, and February 4, 1986, respectively.[3] In a declaration, Ronald Rosen of the Department of Insurance stated that prior to service of the conservation order, the records of the respective insurers showed they had "unrestricted use of the funds" in their accounts at the Bank. Dallas Dudley, Arizona receiver for Great Global, declared his understanding based on review of Great Global's records that Great Global had unrestricted use of the funds in these accounts. Bank officer Bonnie M. Emert declared that, regardless of the showing on the records of the insurers, use of their deposited funds was restricted at all times, in that "placement and maintenance of the deposits was required as a condition of the continued acceptability of their policies as loan collateral." Emert explained that she would be notified of any request by an insurer for "encashment" of a certificate, and, if the request was made at a time when the balances owing on loans secured by its policies exceeded the limit authorized by the Bank for that insurer, absent the deposit, she would request delay of encashment pending reduction in such balances. If the insurer refused her request, she would cause setoff to be made of the account balances against then unpaid return premiums owed by the insurer. In addition, Bank attorney Roy C. Zukerman declared the certificates of deposit referred to by Emert are kept at the Long Beach branch of the Bank, where he maintains his office, and auditors and regulators of insurers maintaining such deposits are told that, "although not formally pledged, the funds are subject to contingent rights of setoff."

The court's orders appointing the Commissioner conservator and restraining orders (Ins. Code, § 1011 et seq.) required the Commissioner to "forthwith take possession of all [of the insurers'] assets, books, records and property, both real and personal, wheresoever situated," vested title to all such property and assets in the Commissioner and enjoined "all persons . . . from interfering in any manner with the [Commissioner's] possession and title thereto. . . ." The orders provided "[t]hat all persons are hereby enjoined from maintaining or instituting any action at law or suit in equity, including but not limited to matters in arbitration, against said [insurers] or against the said [Commissioner], and from attaching or executing upon or taking any legal proceeding against any of the property of [the insurers], and from doing any act interfering with the conduct of said business by the [Commissioner], except after an order from this court obtained after reasonable notice to the [Commissioner];" and that "all funds including certificates of deposit and bank accounts in the name of [the insurers] in various banks . . . are hereby vested in the [Commissioner] and subject to withdrawal upon his order only. . . ."

---

[3] Great Global apparently retained possession of certificate of deposit No. 92384.

Although the Commissioner served these orders on the Bank and demanded that it turn over all of the insurers' funds on deposit, the Bank simply froze the funds evidenced by the aforementioned certificates of deposit.

Thereafter, the Commissioner was appointed liquidator of California Standard on October 1, 1985, and of Great Global on April 4, 1986, by orders providing for fixing of the rights and liabilities of creditors and other interested parties as of the dates of the respective orders, and enjoining all persons from interfering with the possession, title and rights of the Commissioner as liquidator. The orders provided, further, that "[a]ll persons are hereby enjoined from obtaining preferences, judgments, attachments or other liens, or making any levy against [the insurers] or [their] assets without the consent of this court obtained after reasonable notice to said liquidator;" and that "[a]ll funds in bank accounts in the name[s] of [the insurers], or [the Commissioner] as conservator, are hereby vested in said liquidator and said funds shall be subject to withdrawal from said banks upon the order of said liquidator only . . . ."

The Commissioner again demanded that the Bank turn over funds on deposit in the names of the insurers, and the Bank again refused, continuing its freeze of the funds.

On March 24, 1987, the Commissioner sought, and the superior court issued, orders to show cause why the court should not issue orders directing the Bank to turn over the funds evidenced by the subject certificates of deposit. The Bank filed its responses to the orders to show cause, noticed motions for leave to exercise security rights, and filed points and authorities supporting each of these documents. The Commissioner filed points and authorities in reply and opposition and a hearing was held on June 8, 1987, following which the court overruled the Bank's objections to use of the order to show cause proceeding, denied the Bank's motions for leave to exercise its security interest with respect to each of the deposits, and ordered the Bank to turn over the funds evidenced by the certificates of deposit, plus interest, to the Commissioner as liquidator.

### DISCUSSION

The Bank's position is that it, rather than the insurers, is the owner of the funds deposited by them, and their debtor with respect to those funds. (*Kruger* v. *Wells Fargo Bank* (1974) 11 Cal.3d 352, 357 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266], citing *Gonsalves* v. *Bank of America* (1940) 16 Cal.2d 169, 173 [105 P.2d 118].) ▮▮ Conceding that the Commissioner, as conservator and then liquidator, was vested with title to

the insurers' property (Ins. Code, § 1011), and in certain circumstances even entitled to take possession thereof without notice or court order (Ins. Code, § 1013) and in all circumstances by summary proceedings (*Kinder* v. *Superior Court* (1978) 78 Cal.App.3d 574, 580 [144 Cal.Rptr. 291]; *Maloney* v. *Rhode Island Ins. Co.* (1953) 115 Cal.App.2d 238, 251 [251 P.2d 1027]), the Bank contends the summary order to show cause procedure here employed is improper in the case of a person, i.e., the Bank, not a party to the liquidation proceeding who asserts an independent claim of ownership to the asset in its possession. (*Maloney* v. *Rhode Island Ins. Co., supra,* at pp. 249, 251.)

In *Maloney,* the court pointed out that although "the conservatorship court has general jurisdiction over even third parties to determine questions relating to the claims of the insolvent insurance company which has been taken over by the insurance commissioner" (115 Cal.App.2d at p. 249; Ins. Code, § 1058)[4], the commissioner as conservator must nonetheless utilize the correct procedure to enforce his claim. (115 Cal.App.2d at p. 249.) It must be determined whether he was justified in using the summary procedure of an order to show cause, or whether he should have brought a separate equitable action in the conservatorship proceeding to enforce his claim against the appellants. As the *Maloney* court stated, "That is an interesting question." (*Ibid.*) In *Maloney,* where the appellants were partners doing business as an insurance broker, and the funds at issue were premiums collected by the broker from the insured upon delivery of the policy to the insured, the court determined the broker was the insurer's agent with respect to those funds, and the commissioner quite properly sought to collect them via summary proceedings as they were constructively the property of the insurer. (*Id.* at p. 251.) However, the court stated, at pages 249-250: "If appellants were third persons claiming an independent title to the property, then some difficult questions might be presented. There is a substantial body of law to the effect that a receivership court does not have jurisdiction to bring into a pending receivership proceeding by a mere order to show cause persons who are not parties to the receivership and who assert an independent claim of ownership to assets in their possession. (*Stuparich Mfg. Co.* v. *Superior Court,* 123 Cal. 290 . . . ; *Miller* v. *Superior Court,* 63 Cal.App.1 . . . ; *First Nat. H. T. Ltd.* v. *Superior Court,* 88

---

[4] Insurance Code section 1058: "In any proceeding pending under the provisions of this article, the court in which such proceeding is pending shall have jurisdiction to hear and determine, in such proceeding, all actions or proceedings then pending or thereafter instituted by or against the person affected by a proceeding under this article."

The Bank places great reliance upon the fact that section 1058 was amended in 1939 to give the court jurisdiction "to hear and determine," instead of "to summarily hear and determine." We do not believe this amendment precluded all summary insolvency proceedings relating to insurers; rather, the statute as it presently reads authorizes such proceedings as are appropriate to the subject at issue. (E.g., *Maloney* v. *Rhode Island Ins. Co., supra,* 115 Cal.App.2d 238, decided in 1953.)

Cal.App. 292 . . . ; *Tapscott* v. *Lyon,* 103 Cal. 297 . . . .)" (*Maloney* v. *Rhode Island Ins. Co., supra,* 115 Cal.App.2d 238, 249-250.) The *Maloney* court explained the premium there in issue, when paid to the broker, was the property of the insurer. "It was an asset of Rhode Island. It was, through the medium of appellants' agency, constructively in the possession of Rhode Island. It is elementary that, even a receivership court, has power to proceed summarily to recover assets already constructively within the receiver's possession, or to hold an agent for failure to remit such asset." (*Id.* at p. 251.)

In *Kinder* v. *Superior Court, supra,* 78 Cal.App.3d 574, the court held the Commissioner, as liquidator of an insolvent insurance company, could not utilize an order to show cause procedure to recover from an agent of the insolvent company $39,022 allegedly due under four agency contracts. Noting that the decision in *Maloney* was in accord with the settled principle that in marshalling the assets of an insolvent person, a receivership court has the power to proceed summarily to recover assets in the constructive possession of the receiver (*Maloney* v. *Rhode Island Ins. Co., supra,* 115 Cal.App.2d 238, 251), the court observed that the Commissioner's claim in *Kinder* was "for an unliquidated and disputed debt alleged to be due under the formulae prescribed in the agency contracts for the computation of the amount of compensation to which [the agent] was entitled." (*Kinder,* at p. 580.) The Commissioner was not attempting to recover monies in the constructive possession of the insurer, or to hold the agent liable for a breach of fiduciary duty owed to the insurer, as was the case in *Maloney.* (*Id.* at pp. 580-581.) The *Kinder* court concluded "[t]he equitable power of a receivership court to use its summary process to marshal assets of an insolvent estate should not be extended to the recovery of the instant claim. [Citations.]" (*Id.* at p. 581.)

In the present case, the Bank claims not only that the funds belong to it, but that it has a secured claim against the funds, in the nature of a setoff or lien.[5] (Ins. Code, § 1029.)

The Commissioner argues the superior court's restraining orders make it explicitly clear that no one may attach or levy on the certificates of deposit and no one but the Commissioner, as conservator and liquidator, may withdraw funds represented thereby, and that the Bank's freezing of the accounts violated these orders, as well as those prohibiting interference with the Commissioner's title to and possession of the funds or her conduct of the insurers' businesses as conservator and their subsequent liquidation, and constituted a prohibited attachment and an impermissible preference.

---

[5] Technically, the Bank's claim is to a right of setoff, rather than a lien. (*Gonsalves* v. *Bank of America, supra,* 16 Cal.2d 169, 173.)

Concerning the Bank's claimed right of setoff against the funds, the Commissioner contends (1) inasmuch as the funds deposited by the insurers were unrestricted at the time the restraining orders were served, the Bank's right of setoff was extinguished (*Peoples Nat. Bank of Washington* v. *U.S.* (9th Cir. 1985) 777 F.2d 459, 461-462, and cases there cited), and (2) the Bank's claimed right of setoff is precluded by Insurance Code section 1031, subdivision (b), because the insurers' obligations to the Bank were transferred to the Bank by the insureds.

There is nothing in the record to suggest the Bank held the insurers' funds for any purpose other than assuring its receipt of unearned premiums upon cancellation of policies as to which the Bank financed premiums. The Bank's rights to those unearned premiums were assigned to it by the insureds, and were in fact characterized by the Bank as "derivative" in the proceedings below. Subdivision (b) of Insurance Code section 1031 clearly precludes the Bank's claimed right of setoff. Absent that right, there is no disputed claim to the funds requiring a plenary trial. (Cf. *Kinder* v. *Superior Court, supra,* 78 Cal.App.3d 574, 580.)[6]

Insofar as the Bank contends its right to equal protection of the laws is abridged by the application of Insurance Code section 1031, its rights vis-à-vis the insurers, having been assigned to it by the insureds, are no greater than those reposed in the insureds. ■ The overwhelming weight of authority holds "that upon insolvency of an insurance company, its policyholders have valid claims, and become creditors entitled to share pro rata in the assets, to the extent of unearned premiums." (19A Appleman, Insurance Law and Practice § 10729, p. 260.) ■ Upon collection of the assets of the insolvent insurers, including funds on deposit with the Bank, the Bank, as assignee of the insureds, will share pro rata with the other insureds in the funds available for return of unearned premiums. We perceive in this scheme no abridgement of the Bank's right to equal protection of the laws.

Citing *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 332 [47 L.Ed.2d 18, 31-32, 96 S.Ct. 893], the Bank argues the Commissioner's use of the summary procedure violated its right to procedural due process. The *Mathews* court observed that "identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous

---

[6] While it is true the Bank held bare legal title to the funds, it had asserted no rights in them prior to the conservation and liquidation proceedings. Until such assertion, the Bank had, by its own admission, only contingent rights of setoff. The contingency had not occurred, and the insurers' rights to the funds were among their assets at the time of conservation and liquidation, subject to the liquidation order vesting in the liquidator all funds in bank accounts in the names of the insurers.

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]" (424 U.S. at p. 335 [47 L.Ed.2d at p. 33].)

In the present case, the private interest affected by the proceeding was the Bank's claimed right of setoff against the funds deposited by the insolvent insurers. We hold the question whether the Bank had *any* right of setoff in the circumstances here presented was a proper subject of the order to show cause proceeding, as it involved only issues of law. ■ Finally, it is well settled "that the business of insurance is one affected with a public interest." (*Caminetti* v. *State Mut. Life Ins. Co.* (1942) 52 Cal.App.2d 321, 324 [126 P.2d 165], citing *Carpenter* v. *Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 329 [74 P.2d 761].) As such, it is "subject to the reasonable exercise of the state's police power. The only restriction on the exercise of this power is that the state's action . . . shall not be arbitrarily or improperly discriminatory." (*Carpenter* v. *Pacific Mut. Life Ins. Co., supra,* 10 Cal.2d 307, 329.) ■ Here, the state reasonably exercised its police power for the purpose of preserving the insurers' assets in the conservatorship proceeding, and efficiently winding up their affairs in the liquidation proceeding. There was nothing arbitrary or discriminatory about the Commissioner's attempt to seize funds on deposit with the Bank to which the insurers were entitled. In fact, although the Bank may have been permitted by the insurers to set off unearned premiums against these funds prior to insolvency, to permit such setoff after a determination of insolvency would be to permit the Bank, in its capacity as representative of those insureds who financed their premiums, to obtain a preference in the liquidation proceedings over those insureds who did not finance their premiums.

DECISION

The judgments (orders appealed from) are affirmed.

Klein, P. J., and Arabian, J., concurred.