[No. D011062. Fourth Dist., Div. One. Mar. 13, 1990.]

TRIHEDRON INTERNATIONAL ASSURANCE, LTD., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
MARIAN E. WEBER, Real Party in Interest.

936

COUNSEL

Adams, Duque & Hazeltine, Terrence L. Bingman and Mary L. Russell for Petitioners.

No appearance for Respondent.

Lawrence E. Eden and Philip D. Barker for Real Party in Interest.

OPINION

**TODD, J.**—In this suit Marian E. Weber (Weber) seeks to recover, inter alia, for her defense costs and attorney's fees she claims Trihedron Interna-

tional Assurance, Ltd. (Trihedron), and the National Real Estate Association (NREA) (collectively the defendants) have wrongfully refused to pay. The defendants petitioned this court for a writ of mandate after the trial court granted Weber's motion to require them to post a bond under Insurance Code section 1616.[1] Both defendants argue the section is unconstitutional in that it violates their rights to equal protection and procedural due process. Additionally, NREA argues it is not subject to section 1616 which only applies to "insurers." We conclude the section is a proper exercise of the state's police power to regulate the transaction of insurance and does not violate the defendants' constitutional rights. We therefore deny the petition as to Trihedron. We grant the petition as to NREA on the grounds it is not an insurer within the meaning of the section.

## Background

Weber is a licensed real estate broker associated with Realty Experts. On December 3, 1986, Don Cowan, owner of Realty Experts, applied for membership in NREA, an Ohio Corporation. At that time NREA made available to its members a $5 million errors and omission policy issued by Trihedron, a corporation of the Turks Island, British West Indies. Trihedron issued a policy to Realty Experts covering Weber with an effective date of December 1, 1986. On December 8th or 9th Weber was served as a defendant in several lawsuits which were eventually consolidated (the underlying case). She tendered her defense to Trihedron which initially agreed to pay her defense costs.

Although the record is not entirely clear, it appears Weber filed this suit when a dispute arose on when the defense costs and attorney's fees would be paid. The defendants' demurrer was overruled, after which they answered. Weber moved for an order requiring the defendants to file a bond to secure payment of final judgment or, in the alternative, to strike the answer and enter default. The court ordered the defendants to post a bond in the amount of $40,000.

The defendants petitioned this court to issue a peremptory writ of mandate and/or certiorari directing the court to vacate its order and directing the court to enter a new order denying Weber's motion. We stayed enforcement of the court's order.

## Discussion

In these proceedings we are asked to determine the constitutionality of section 1616, which requires nonadmitted foreign or alien insurers to either

---

[1] All statutory references are to the Insurance Code unless otherwise specified.

procure a certificate of authority to transact insurance in California or to post a bond sufficient to secure payment of a final judgment before the insurer can file any pleading in an action instituted against it.[2] The defendants contend the section violates both their right to equal protection and their right to procedural due process.

*Section 1616 Does Not Violate Defendants' Right to Equal Protection*

■ The defendants contend section 1616 denies them equal protection of the law because it requires a nonadmitted foreign or alien insurer to become a "California insurer," post security to cover any judgment the plaintiff might recover, or give up its right to defend itself while no such restrictions are placed on domestic insurance companies. This position ignores the well established right of states to regulate the insurance business and the valid state purpose served by section 1616.

■ California and other states have a long history of regulating the insurance industry under their police power to protect their citizens.

"[T]he business of insurance is affected with a public interest . . . . (*Carpenter* v. *Pacific Mut. Life Ins. Co.*" (1937) 10 Cal.2d 307, 329. Accordingly, it is "subject to the reasonable exercise of the state's police power. The only restriction on the exercise of this power is that the state's action shall be reasonably related to the public interest and shall not be arbitrary or improperly discriminatory." (*Ibid.*; see also *Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 830 [258 Cal.Rptr. 161, 771 P.2d 1247]; *Gillespie* v. *California Standard Indemnity Co.* (1989) 212 Cal.App.3d 1351, 1360 [264 Cal.Rptr. 146].)

Historically, the United States Supreme Court upheld state regulation of the insurance industry concluding it was not interstate commerce and not subject to federal regulation under the commerce clause. (See *People* v. *United National Life Ins. Co.* (1967) 66 Cal.2d 577, 583 [58 Cal.Rptr. 599, 427 P.2d 199].) In *U.S.* v. *Underwriters Assn.* (1944) 322 U.S. 533, 552-553 [88 L.Ed. 1440, 1457, 64 S.Ct. 1162], however, the court held that the business of insurance was interstate commerce and subject to federal regulation. In response to that decision and to ensure the states would have the continued ability to regulate the insurance business, Congress enacted the

[2] Section 1616 provides in pertinent part: "Before any nonadmitted foreign or alien insurer shall file or cause to be filed any pleading in any action . . . instituted against it, the insurer shall either (1) procure a certificate of authority to transact insurance in this state; or (2) give a bond in the action . . . in an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in the action, . . ."

McCarran-Ferguson Act. (See 59 Stat. 33; *Group Life & Health Ins. Co.* v. *Royal Drug Co.* (1979) 440 U.S. 205, 217-218 [59 L.Ed.2d 261, 271-272, 99 S.Ct. 1067]; *Prudential Ins. Co.* v. *Benjamin* (1946) 328 U.S. 408, 429-431 [90 L Ed 1342, 1359-1361, 66 S.Ct. 1142, 164 A.L.R. 476].) The McCarran-Ferguson Act declared continued state regulation and taxation of the "business of insurance" to be in the public interest and provided that such business was subject to state laws relating to its regulation or taxation.[3] State regulation, of course, is subject to constitutional requirements of due process and equal protection. (See e.g. *People* v. *United National Life Ins. Co., supra,* 66 Cal.2d at pp. 584-585; *Metropolitan Life Ins. Co.* v. *Ward* (1985) 470 U.S. 869, 880 [84 L.Ed.2d 751, 760-761, 105 S.Ct. 1676].)

■ Section 1616 is a proper exercise of the state's police power if the section is reasonably related to the state's interest and its requirements are not arbitrary or improperly discriminatory. (*Carpenter* v. *Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 329 [74 P.2d 761].) It is Weber's position section 1616 encourages nonadmitted foreign and alien insurers transacting insurance in California to comply with the admission requirement set forth in section 700, subdivision (a).[4] Weber argues the existence of criminal penalties under section 700(b) for failure to comply with section 700(a) are not always effective and that section 1616 serves as a final "stopgap" measure to ensure that errant insurers comply with certification requirements.[5]

■ To determine whether section 1616 is a valid exercise of the state's police power, we must first determine whether section 700(a) serves a valid state purpose and whether that purpose is furthered by section 1616. Section 700(a) governs the admission and certification of insurers and provides insurers must be "admitted" before transacting any class of insurance business in the state.[6] Transacting insurance is broadly defined as the "solicita-

---

[3] The McCarran-Ferguson Act in pertinent part provides: "That the Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States." (59 Stat. 33.)

"The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." (15 U.S.C. § 1012(a).)

[4] When referring to statutory subparts we omit repetition of the word "subdivision."

[5] Section 700(b) provides a willful violation of the certification requirement is punishable by imprisonment of up to one year and/or imposition of a fine not to exceed $100,000.

[6] In 1986 at the time of the purported sale of the insurance contract section 700(a) provided as follows: "A person shall not transact any class of insurance business in this State without first being admitted for such class. Such admission is secured by procuring a certificate of au-

tion," "negotiations preliminary to execution," "execution of a contract of insurance," or "transaction of matters subsequent to execution of the contract and arising out of it." (§ 35.)

Section 700(a) is applicable to all insurers, domestic, foreign and alien. A domestic insurer is one organized under California law (§ 26), a foreign insurer is one not organized under California law (§ 27), and an alien insurer is a foreign insurer organized under the laws of any jurisdiction other than another state of the United States (§ 1580). To qualify for admission an insurer must comply with certain financial requirements, regarding paid-in capital and surplus, and file financial statements. (See, e.g., §§ 700.01-700.05, 706, 10510, 12359, 12440.)

In the case of an alien insurer, such as Trihedron, the insurer must deposit in this state, or some other state of the United States, an amount of money or securities equal to the minimum amount of paid-in capital required of incorporated insurers transacting the same class of insurance transacted by the alien insurer. (§§ 1581-1585.) Such deposit is maintained for the benefit and security of all policyholders and creditors of the alien insurer. (§ 1586.) Additionally, an admitted alien insurer must file annual financial statements with the Insurance Commissioner showing its financial condition meets the requirements set by the code. (§ 1591.)

In sum, section 700(a) requires insurers to meet certain financial guidelines the state deems necessary for the protection of California residents before the state will allow the insurer to transact insurance business within the state. The requirements specifically applicable to alien insurers (1) assure that alien insurers meet equivalent financial requirements to those imposed upon domestic and foreign insurers, and (2) provide insureds security and a source of recovery within this state or some other state of the United States. Section 700(a)'s admission requirement serves the valid state purpose of protecting California citizens from fraudulent or insolvent insurers. (See *People* v. *United National Life Ins. Co., supra,* 66 Cal.2d at p. 595.) ▪ Section 1616, by requiring a foreign or alien insurer to procure a certificate of authority to transact insurance before defending in a lawsuit filed against it, furthers the legitimate state interest of encouraging companies that sell insurance in the State of California to comply with the requirements of section 700(a).

---

thority from the commissioner. Such certificate shall not be granted until the applicant conforms to the requirements of this code and of the laws of this State prerequisite to its issue."

Effective January 1, 1989, section 700(a) was amended to make nonsubstantive changes.

California's admission requirement is subject to certain exceptions (reinsurer, direct dealing, and surplus line brokers) not here in issue. (See generally 1 Bender, Cal. Insurance Law & Practice (1989 rev.) § 3.03, pp. 3-11 to 3-13.)

Having found section 1616 serves a valid state purpose, we now address whether the fact the section applies to foreign and alien insurers and not to domestic insurers violates the foreign and alien insurer's right to equal protection.

"It is basic that the guarantees of equal protection embodied in the Fourteenth Amendment to the United States Constitution and article I, sections 11 and 21, of the California Constitution, prohibit the state from arbitrarily discriminating among persons subject to its jurisdiction. This principle, of course, does not preclude the state from drawing any distinctions between different groups of individuals, but does require that, at a minimum, classifications which are created bear a rational relationship to a legitimate public purpose." (*In re King* (1970) 3 Cal.3d 226, 232 [90 Cal.Rptr. 15, 474 P.2d 983]. See also 8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 599, pp. 51-53.)

A statute is not invalid because it does not cover every permissible class. The Legislature may regulate what it perceives to be the greater evil while not addressing what it perceives to be a lesser evil. (See e.g. *Warner Bros. Pictures* v. *Brodel* (1948) 31 Cal.2d 766, 777 [192 P.2d 949, 3 A.L.R.2d 691]; *Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 132-133 [216 P.2d 825, 13 A.L.R.2d 252]. See generally 8 Witkin, *supra*, § 600, pp. 53-54.)

Section 1616 was enacted in Statutes 1949, chapter 495, Section 2 as part of the Unauthorized Insurers Process Act. (§§ 1610-1620.) The uncodified provisions of section 1 of the act state: "The purpose of this act is to subject certain insurers to the jurisdiction of courts of this State in suits by or on behalf of insured or beneficiaries under insurance contracts. The Legislature declares that it is a subject of concern that nonadmitted insurers have issued policies of insurance to residents of this State physically present herein at the time of such issuance, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies; that this State has an interest in providing to its residents a convenient forum for the purpose of asserting and enforcing legal rights under such policies; that if such residents are left to seek remedy in distant forums they will be, for practical purposes, without remedy. In furtherance of such state interest, the Legislature herein provides a method of substituted service of process upon such insurers and declares that in so doing it exercises its power to protect its residents and to define, for purposes of this statute, what constitutes doing business in this State, and also exercises powers and privileges available to the State by virtue of Public Law 15, 79th Congress of the United States, Chapter 20, First Session, S.340, as amended, which declares that the business of insurance and

every person engaged therein shall be subject to the laws of the several states." (Stats. 1949, ch. 495, § 1, pp. 851-852.)

In enacting the Unauthorized Insurers Process Act, the Legislature intended to protect California residents who had purchased policies from nonadmitted out-of-state insurers transacting insurance in California. The Legislature was concerned out-of-state insurers would escape liability by forcing California residents to sue them in distant forums. With respect to section 1616's application to foreign and alien insurers, the Legislature could readily have concluded plaintiffs suing out-of-state nonadmitted insurers, possibly transacting business through the mail without an agent in California, required greater protection than plaintiffs suing domestic insurers already subject to California law and state control. Section 1616's application to out-of-state insurers is rationally related to providing that protection through requiring insurers to comply with section 700(a). The bonding provision does nothing more than provide the insurer with an alternate method for providing protection to the insured or beneficiary. The section does not discriminate arbitrarily.[7]

■ The defendants further argue that even if section 1616 serves the valid purpose of encouraging foreign and alien insurers selling policies within California to become admitted, it is not narrowly drawn to effectuate that purpose. The defendants correctly point out that the section does not specifically limit its application to suits arising out of a nonadmitted insurer transacting insurance in California. From this the defendants erroneously conclude the section requires a nonadmitted foreign or alien insurer sued in a matter unrelated to transacting insurance in California to become certified or post bond before filing a pleading. " '[W]e must interpret the statute in question in accordance with applicable rules of statutory construction, fundamental among which are those which counsel that the aim of such construction should be the ascertainment of legislative intent so that the purpose of the law may be effectuated [citation]; that a statute should be construed with reference to the entire statutory system of which it forms a part in such a way that harmony may be achieved among the parts [citation]; and that courts should give effect to statutes "according to the usual, ordinary import of the language employed in framing them." [Citation.]' "

[7] The defendant's reliance on *Metropolitan Life Ins. Co.* v. *Ward,· supra*, 470 U.S. 869 is misplaced. There the court found an Alabama statute imposing a lower gross premium tax rate on domestic insurance companies than on out-of-state insurance companies to violate equal protection. The court's determination was based upon its holding that the two purposes furthered by the statute, promotion of domestic business and encouraging investment in Alabama assets, did not constitute legitimate state purposes considering their discriminatory impact. (*Id.* at pp. 882-883 [84 L.Ed.2d at p. 762].) The defendants mistakenly contend section 1616 serves the same two purposes.

(*People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322], quoting *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33].)

As previously discussed, section 1616 was enacted as part of the Unauthorized Insurers Process Act. Section 1 of that act, *ante* at pages 943-944, expresses the Legislature's concern that nonadmitted out-of-state insurers were issuing insurance policies to California residents and states California has an interest in providing the residents with a convenient forum for enforcing the residents' legal rights under such policies. Section 1611 sets forth those acts that constitute an insurer's appointment of the Insurance Commissioner under section 1610 as its attorney for service of process. All of the listed acts involve transacting insurance in California.[8]

When section 1616 is construed with reference to the entire statutory scheme and with reference to the stated purpose of the Unauthorized Insurers Process Act to provide a forum for residents to "assert and enforce" their legal right under insurance policies issued by nonadmitted insurers, the legislative intent to limit the application of section 1616 to those actions arising out of the transaction of insurance by nonadmitted insurers in California is clear. Accordingly, we reject defendants' argument section 1616 is overbroad and applies to a foreign or alien insurer sued in matters unrelated to the transaction of insurance in California.

We also find no merit to the defendants' argument section 1616 prohibits an out-of-state insurer from contesting jurisdiction without posting security. The section prevents the filing of "pleadings." Pleadings are defined as "complaints, demurrers, answers and cross-complaints." (Code Civ. Proc., § 422.10.) There is nothing in the section which prevents an insurer from making a special appearance to contest jurisdiction, for example, through a motion to quash summons. (See generally 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, §§ 149-151, pp. 534-537.) Additionally, section 1618 specifically allows a nonadmitted foreign or alien insurer "to quash a writ or to set aside service thereof" effected through section 1612 if the insurer has not performed any of the acts connected with transacting insurance set forth in section 1611.

---

[8] The acts listed in section 1611 are: "(1) The issuance or delivery to residents of, or to corporations authorized to do business in, this State of contracts of insurance insuring (a) the lives or persons of residents of this State physically present herein at the time of such issuance or delivery or (b) property or operations located in this State.

"(2) The solicitation of applications for such contracts.

"(3) The collection of premiums, membership fees, assessments or other consideration for such contracts.

"(4) Any other transaction of business arising out of such contracts."

*Section 1616 Does Not Violate Defendants' Right to Due Process*

■ The defendants, relying on a long line of cases dealing with the prejudgment taking of property, argue section 1616 violates fundamental due process notions by, inter alia, forcing defendant insurers to post a bond without regard to the merits of the suit or the need for the deprivation and by further failing to provide for a hearing either before or after the deprivation.[9] Weber, on the other hand, argues the provision is a part of the state statutory scheme to regulate the insurance business and serves the essential governmental purpose of protecting California citizens from insurers who refuse to comply with the law and become certified pursuant to section 700(a). It is Weber's position the governmental purpose outweighs any due process attack.

■ The right to procedural due process guaranteed by the United States and California Constitutions requires that an individual be afforded notice and an opportunity for hearing before he is deprived of a significant property interest. (*Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 541 [488 P.2d 13].) Exceptions to this requirement can only be justified in extraordinary circumstances. (*Ibid.*) ■ A pretrial requirement to post bond normally constitutes a taking of property subject to due process requirements. (See *Brooks* v. *Small Claims Court* (1973) 8 Cal.3d 661, 667-668 [105 Cal.Rptr. 785, 504 P.2d 1249].)

■ In the line of cases relied upon by the defendants beginning with *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820] the United States and California Supreme Courts have struck down prejudgment summary procedures which deprive persons of their property. (*Sniadach* v. *Family Finance Corp., supra,* 395 U.S. 337 [prejudgment wage garnishment]; *Bell* v. *Burson* (1971) 402 U.S. 535 [29 L.Ed.2d 90, 91 S.Ct. 1586] [prejudgment suspension of driver's license]; *Fuentes* v. *Shevin* (1972) 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983] [prejudgment writ of replevin]; *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.* (1975) 419 U.S. 601 [42 L.Ed.2d 751, 95 S.Ct. 719] [prejudgment garnishment of bank account]; *McCallop* v. *Carberry* (1970) 1 Cal.3d 903 [83 Cal.Rptr. 666, 464 P.2d 122] [prejudgment wage garnishment]; *Blair* v. *Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206] [claim and delivery law]; *Randone* v. *Appellate Department, supra,* 5 Cal.3d 536 [pre-

---

[9] Cowan in filling out the application for insurance answered "No" to the question, "To your knowledge are there any claims which may be brought against the firm for professional errors or omissions?" The defendants claim both he and Weber, while not being served, had already been sued, deposed, and told they were defendants in the underlying case. It is the defendants' position the insurance was obtained by fraud and there is no merit to Weber's suit.

judgment attachment]; *Rios* v. *Cozens* (1972) 7 Cal.3d 792 [103 Cal.Rptr. 299, 499 P.2d 979], judgment vacated (1973) 410 U.S. 425 [35 L.Ed.2d 398, 93 S.Ct. 1019], reiterated and reinstated (1973) 9 Cal.3d 454 [107 Cal.Rptr. 784, 509 P.2d 696] [prejudgment suspension of driver's license]; *Brooks* v. *Small Claims Court, supra,* 8 Cal.3d 661 [statute requiring the posting of bond to obtain a trial de novo in superior court on appeal from small claims judgment]; *Beaudreau* v. *Superior Court* (1975) 14 Cal.3d 448 [121 Cal.Rptr. 585, 535 P.2d 713] [prejudgment filing of undertaking in suit against a public entity].) Due process however does not prohibit all deprivation of property without notice and hearing. In extraordinary situations in which a governmental interest necessitates such action, summary deprivation of property may pass constitutional muster if a statute is narrowly drawn to further that interest. (See *Randone* v. *Appellate Department, supra,* 5 Cal.3d at pp. 552-555. See also *Sniadach* v. *Family Finance Corp., supra,* 395 U.S. at p. 339 [23 L.Ed.2d at p. 352].)

 With the exception of *Bell* v. *Burson, supra,* 402 U.S. 535 and *Rios* v. *Cozens, supra,* 7 Cal.3d 792, the cases relied upon by the defendants deal with traditional prejudgment creditors' remedies and as such are readily distinguishable from the instant case. In the creditors' remedies cases the state has no substantial interest to protect in providing plaintiffs with a prejudgment financial advantage over defendants. Here, when a case arises out of a nonadmitted foreign or alien insurer transacting insurance in California, the state has a valid interest in forcing the insurer to comply with the state's certification requirements thereby protecting California insureds and beneficiaries. Section 1616 in the first instance requires compliance with those certification requirements. The statute provides the insurer with the generally less onerous alternative of posting a bond in lieu of meeting the certification requirements. Under these unique circumstances, the bonding requirement can hardly be viewed as a deprivation of a significant property interest subject to due process requirements.

Additionally, the instant case is readily distinguishable from *Bell* v. *Burson, supra*, 402 U.S. 535 and *Rios* v. *Cozens, supra*, 7 Cal.3d 792, which dealt with prejudgment suspension of licenses to drive under the states' financial and safety responsibility laws. In both *Bell* and *Rios* the statutes in effect at the time did not require all motorists and vehicles to be insured. Rather, the statutes provided that if an uninsured motorist had an accident his license would be suspended unless he posted security in an amount sufficient to satisfy a judgment against him. In *Bell* the Georgia statute did not allow consideration of the motorist's responsibility for the accident at the presuspension hearing, while in *Rios* the California Department of Motor Vehicles made a determination of liability before suspending a license

but did not afford the motorist a presuspension hearing. Under *Bell* and *Rios*, once having afforded the motorist the valuable interest of a driver's license, Georgia and California could not suspend that license or require the posting of security without providing a hearing to determine liability for the accident.

Here, California requires an insurer to be certified to transact insurance in the state. (§ 700(a).) An insurer has no right to transact insurance in this state absent compliance with the certification requirements. Section 1616's requirements therefore do not deprive insurers of any substantial interest or existing right. Rather the section encourages compliance with the already existing statutory mandate. Accordingly, we conclude section 1616 does not violate a nonadmitted foreign or alien insurer's due process rights when the insurer is sued in connection with transacting insurance business in California.

*Trihedron Is Subject to Sections 700(a) and 1616 as It Transacted Insurance*

In its reply brief Trihedron argues that while it may be subject to jurisdiction pursuant to California's long-arm statute, it is not subject to section 700(a) certification requirement because the section applies only to insurance companies transacting insurance business in the state within the meaning of section 35. Trihedron argues it has not transacted business in California as defined by section 35 (i.e. solicitation, negotiation, execution of an insurance contract, or later transactions arising out of the contract). Trihedron's position is not supported by the record or the applicable law.

Trihedron admits it issued a policy to Don Cowan owner of Realty Experts and further acknowledges in its response to interrogatories that Weber is an insured. It is not disputed that both Cowan and Weber are California residents and that Realty Experts' place of business is California. In the court below Weber argued NREA solicited the insurance contract through its brochure offering errors and omission coverage with membership in the organization and submitted a copy of the brochure to the court. Trihedron admits Cowan applied for membership in NREA on December 3, 1986, and NREA received the application on December 9, 1986. Trihedron's attorney also admitted at oral argument below that insurance premiums were "sent" to NREA with the understanding they go to Trihedron. Weber submitted a declaration of her attorney with copies of correspondence between the California attorney defending Weber in the underlying case and NREA.

The record demonstrates an out-of-state insurer sold a California resident insurance. There is nothing in the record to indicate the insured at any time left California. The only reasonable inference to be drawn from the record is that the transaction was carried out through the mails. Insurers who have no agents in this state and solicit and negotiate their insurance business with California residents exclusively by mail from outside the state are subject to section 700(a). (*People* v. *United National Life Ins. Co., supra,* 66 Cal.2d at pp. 580-581, 595.)

 Trihedron does not actually deny that insurance was transacted in California but rather asserts that there is no evidence Trihedron carried out the transactions. The record at a minimum supports the conclusion NREA transacted insurance business within the meaning of section 35 on Trihedron's behalf. Trihedron cannot escape being subject to this state's regulatory scheme by transacting its business through an agent. (Cf. *Illinois Commercial Men's Assn.* v. *State Bd. of Equalization* (1983) 34 Cal.3d 839, 849-850 [196 Cal.Rptr. 198, 671 P.2d 349] [insurer subject to state taxes although transacted insurance through agents].)

*NREA Is Not Subject to Section 1616 as It Is Not an Insurer*

 NREA argues it cannot be required to post a bond under section 1616 because the section applies to "insurers" only. Under section 23 an insurer is defined as a "person who undertakes to indemnify another by insurance." Weber in her complaint alleged Trihedron issued the insurance contract and NREA acted as Trihedron's agent in receiving premium payments. However, Weber now argues the insurance contract was with NREA because NREA solicited the contract through its brochure, accepted premium payments, conducted correspondence on the handling of the underlying case, handled claims, assured payments of benefits, and decided what counsel would represent Weber in the underlying case. Even assuming Weber is correct that NREA acted in the manner she now argues, these acts do not constitute an undertaking to indemnify the insured. Rather, they are consistent with NREA acting as Trihedron's agent.[10] Accordingly, NREA is entitled to have the writ issue on this alternative ground.

An alternative writ or order to show cause would add nothing to the presentation. A peremptory writ is proper. (Code Civ. Proc., § 1088; *United Nuclear Corp.* v. *Superior Court* (1980) 113 Cal.App.3d 359 [169 Cal.Rptr.

---

[10] We have reviewed the evidence (i.e., NREA brochure offering membership and correspondence between Weber's attorney and NREA) submitted below and find none demonstrating NREA undertook to indemnify anyone.

827]; *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 697 [96 Cal.Rptr. 165].)

## DISPOSITION

Let a peremptory writ issue directing the court to vacate its order to the extent it requires NREA to post bond. In all other respects the petition is denied. The stay is vacated.

Work, Acting P. J., and Nares, J., concurred.