[No. H012606. Sixth Dist. Aug. 3, 1995.]

ILANA LOVE, Plaintiff and Appellant, v.
CITY OF MONTEREY et al., Defendants and Respondents.

COUNSEL

David W. Brown and David M. Olenczuk for Plaintiff and Appellant.

William B. Conners, City Attorney, Iverson, Yoakum, Papiano & Hatch, Patrick McAdam and Frederick B. Hayes for Defendants and Respondents.

Louise H. Renne, City Attorney (San Francisco), Burk E. Delventhal and James H. Cumming, Deputy City Attorneys, as Amici Curiae on behalf of Defendants and Respondents.

OPINION

BAMATTRE-MANOUKIAN, Acting P. J.—Have the City of Monterey and the Office of Parking Violations (collectively Monterey) afforded Ilana Love (Love) due process by requiring her to deposit the amount of the parking penalty on a parking ticket in order to contest it at an administrative hearing? The answer is yes, according to the First District Court of Appeal (Division One) in *Tyler* v. *County of Alameda* (1995) 34 Cal.App.4th 777 [40 Cal.Rptr.2d 643] (*Tyler*). For the reasons stated below, we agree with *Tyler* and affirm the judgment denying Love a writ of mandate and a preliminary injunction.

*Facts*

On Sunday, November 21, 1993, Love found a Notice of Parking Violation (NPV) on her car when she returned from shopping at Del Monte Shopping Center in Monterey. She was cited at 7:31 p.m. for violating

section 20-37.4 of the Monterey City Code by parking in a handicapped space in the parking lot next to a Macy's store. The penalty for this violation of the city code was $275.

The front of the ticket advised: "request for administrative review of this citation required within 21 days." The back of the ticket further advised: "You may request an administrative review appearance by phoning the Office of Parking Violations." Two telephone numbers were provided. It also stated: "PENALTY OR ADMINISTRATIVE REVIEW REQUEST WITHIN 21 DAYS OR FURTHER PENALTIES WILL BE ASSESSED." The Office of Parking Violations is really Lockheed Information Management Services, Inc., or Lockheed IMS.

On December 8, 1993, Love wrote a letter to Monterey. She asked that the citation be dismissed due to the following "unique circumstances." Several factors combined to hide the handicapped markings from her. It was dark at 7 p.m. when she parked. Other cars were lined up in the parking lot looking for spaces. She pulled into the space just after another car pulled out. The car next to hers was parked partly in the handicapped space, covering the special blue lines marking the space. It was an unintentional error to park in the handicapped space.

On January 5, 1994, the "Monterey P. D." sent Love a form "Notice of Administrative Review Finding." The reviewer, not the same person who issued the citation, determined that the citation was valid because the handicapped spaces were clearly marked. Love was informed that she owed $275.

The form went on to advise Love of her right to an administrative hearing pursuant to California Vehicle Code section 40200.7.[1] "Administrative Hearing requests must be submitted by the 15th day following the date of mailing to you of the results of the processing agencies [*sic*] administrative review. *Send the original citation and a check for the amount of penalty deposit*, along with a written explanation as to why you feel the NPV is unwarranted." (Italics in original.) The form further explained that Love could receive an administrative hearing either by mail or in person. Under either alternative, Love was required to send a check in the amount of the penalty. "If you prevail, and the NPV is suspended your money deposit is refunded by the issuing agency. If you are found liable for the NPV the penalty is paid.

---

[1]Unspecified section references are to the Vehicle Code.

However, you may request a review through the court system." The form further explained how to request and obtain court review.

Instead of requesting an administrative hearing, Love contacted Monterey Attorney David Brown, author of a book entitled Fight Your Ticket, published by Nolo Press. On January 18, 1994, on Love's behalf, Brown filed a complaint in the Monterey County Superior Court, initiating this action. Love requested relief by injunction, mandate, or declaration. The superior court ordered that Monterey and the Office of Parking Violations be temporarily restrained from requiring prepayment of penalties to obtain administrative hearings.

Love alleged in her original complaint that she would be irreparably harmed because prepaying $275 would seriously interfere with her ability to pay for life's necessities of food and shelter. Monterey demurred on the basis that Love did not ask for a hardship waiver of the prepayment requirement. Opposing the demurrer, Love proposed to amend her complaint to allege that she would not qualify for a hardship waiver. Although her own income is modest, she is not indigent since the income of her husband and her household is substantial. She also argued that her ability to prepay did not alter the process due.

At a hearing on March 18, 1994, the court issued a preliminary injunction as to Love only. The court also scheduled a hearing on the merits and on Love's application for certification of a class action. At a hearing on April 29, 1994, the trial court denied Love's request for a writ of mandate and an injunction. The court did not reach the class certification issues.

*The Statute*

Effective July 1, 1993, the Legislature removed parking tickets from the jurisdiction of the criminal courts and provided for administrative procedures instead, followed by optional judicial review. The Legislature made the following findings. "(a) Existing statutory requirements for enforcing and contesting unlawful standing and parking violations in the courts impose an unnecessary burden on the motorists and the public. [¶] (b) Criminal penalties are not appropriate sanctions for standing and parking violations; and criminal procedures are not necessary for the fair enforcement of those violations. [¶] (c) With the enactment of appropriate fiscal and procedural safeguards, cities, counties, districts, public colleges and universities, and other public entities can collect most standing and parking penalties, and

fairly resolve most contested parking violations without court involvement." (Stats. 1992, ch. 1244, § 1.)

Under the new statutes, when a notice of parking violation is uncontested, proceedings terminate when the penalty is timely paid. (§ 40204.)[2] If an uncontested ticket is unpaid, the "processing agency"[3] shall deliver a delinquent notice to the vehicle's registered owner. (§ 40206.)[4] If this notice is ignored, the agency may so report to the Department of Motor Vehicles, which is required to collect the unpaid penalties upon renewal of either the owner's driver's license (§ 12808.1) or the vehicle's registration (§§ 4760; 40220, subd. (a)).[5] Alternatively, if the registration is 60 days beyond renewal and the accrued penalties exceed $400, the agency

---

[2]Section 40204 provides: "If the parking penalty is received by the person authorized to receive the deposit of the parking penalty and there is no contest as to that parking violation, the proceedings under this article shall terminate."

[3]The "processing agency" is the agency responsible for processing parking tickets. (§ 40200.6.) It may or may not be the agency that issued the ticket, because the statutes allow the issuing agency to contract with other government agencies or private vendors to process the tickets. (§ 40200.5.)

[4]Section 40206 provides: "(a) If the payment of the parking penalty is not received by the person authorized to receive a deposit of the parking penalty by the date fixed on the notice of parking violation under Section 40202, the processing agency shall deliver to the registered owner a notice of delinquent parking violation.

"(b) Delivery of a notice of delinquent parking violation under this section may be made by personal service or by first-class mail addressed to the registered owner, as shown on records of the Department of Motor Vehicles."

[5]Section 12808.1 provides: "The department shall refuse to issue or renew any license if the applicant has been mailed a notice of delinquent parking violation relating to standing or parking, the processing agency has filed or electronically transmitted to the department an itemization of unpaid parking penalties, including administrative fees pursuant to Section 40220, and the applicant has not paid the parking penalty and administrative fee pursuant to Section 40211, unless he or she pays to the department, at the time of application, the full amount of all outstanding parking penalties and administrative fees, as shown by records of the department."

Section 4760 provides in part: "(a)(1) Except as provided in subdivision (b), the department shall refuse to renew the registration of any vehicle if the registered owner or lessee has been mailed a notice of delinquent parking violation relating to standing or parking, the processing agency has filed or electronically transmitted to the department an itemization of unpaid parking penalties, including administrative fees pursuant to Section 40220, and the owner or lessee has not paid the parking penalty and administrative fee pursuant to Section 40211, unless he or she pays to the department, at the time of application for renewal, the full amount of all outstanding parking penalties and administrative fees, as shown by records of the department.

". . . . . . . . . . . . . . . . . . . .

"(b) The department shall not refuse to renew the registration of any vehicle owned by a renter or lessor if the applicant provides the department with the abstract or notice of disposition of parking violation issued pursuant to subdivision (c) for clearing all outstanding parking penalties and administrative fees as shown by the records of the department.

"(c) The court or designated processing agency shall issue an abstract or notice of disposition of parking violation to the renter or lessor of a vehicle issued a notice of

may file proof with the court with the same effect as a civil judgment. (§§ 40220, subd. (b), 40221.)[6] If a vehicle accumulates five or more overdue penalties, it may be immobilized (§ 22651.7)[7] or impounded

delinquent parking violation relating to standing or parking, if the renter or lessor provides the court or processing agency with the name, address, and driver's license number of the rentee or lessee at the time of occurrence of the parking violation."

Section 40220 provides in part: "Except as otherwise provided in Sections 40221 and 40222, the processing agency shall proceed under only one of the following options in order to collect an unpaid parking penalty: [¶] (a) File an itemization of unpaid parking penalties and administrative and service fees with the department for collection with the registration of the vehicle pursuant to Section 4760."

[6]Section 40220 further provides in part: "Except as otherwise provided in Sections 40221 and 40222, the processing agency shall proceed under only one of the following options in order to collect an unpaid parking penalty: [¶] . . . [¶] (b) If more than four hundred dollars ($400) in unpaid penalties and fees have been accrued by any person or registered owner, proof thereof may be filed with the court with the same effect as a civil judgment. Execution may be levied and other measures may be taken for the collection of the judgment as are authorized for the collection of an unpaid civil judgment entered against a defendant in an action on a debtor. The court may assess costs against a judgment debtor to be paid upon satisfaction of the judgment. The processing agency shall send a notice by first-class mail to the person or registered owner indicating that a judgment shall be entered for the unpaid penalties, fees, and costs and that, after 30 days from the date of the mailing of the notice, the judgment shall have the same effect as an entry of judgment against a judgment debtor. The person or registered owner shall also be notified at that time that execution may be levied against his or her assets, liens may be placed against his or her property, his or her wages may be garnisheed, and other steps may be taken to satisfy the judgment. If a judgment is rendered for the processing agency, that agency may contract with a collection agency licensed pursuant to Chapter 8 (commencing with Section 6850) of Division 3 of the Business and Professions Code to collect the amount of that judgment.

"Notwithstanding any other provision of law, the processing agency shall pay the established first paper civil filing fee at the time an entry of civil judgment is requested."

Section 40221 provides: "The processing agency shall not file a civil judgment with the court relating to a parking violation which has been filed with the department unless the processing agency has determined that the registration of the vehicle has not been renewed for 60 days beyond the renewal date and the citation has not been collected by the department pursuant to Section 4760."

[7]Section 22651.7 provides: "In addition to, or as an alternative to, removal, any peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, or any regularly employed and salaried employee who is engaged in directing traffic or enforcing parking laws and regulations, of a jurisdiction in which a vehicle is located may immobilize the vehicle with a device designed and manufactured for the immobilization of vehicles, on a highway or any public lands located within the territorial limits in which the officer or employee may act if the vehicle is found upon a highway or any public lands and is known to have been issued five or more notices of parking violation which are delinquent because the owner or person in control of the vehicle has not responded to the agency responsible for processing notices of parking violation within 21 calendar days of citation issuance or 14 calendar days of a notice of delinquent parking violation, or the registered owner of the vehicle is known to have been issued five or more notices for failure to pay or failure to appear in court for traffic violations for which no certificate has been issued by the magistrate or clerk of the court hearing the case showing that the case has been adjudicated or concerning which the registered owner's record has not been cleared pursuant

(§ 22651, subd. (i)(1)).[8]

There are three steps or stages for contesting a parking ticket. "If a person contests the parking violation, the processing agency shall proceed in accordance with Section 40215." (§ 40205.) An investigation can be requested in

to Chapter 6 (commencing with Section 41500) of Division 17. The vehicle may be immobilized until that person furnishes to the immobilizing law enforcement agency all of the following:

"(a) Evidence of his or her identity.

"(b) An address within this state at which he or she can be located.

"(c) Satisfactory evidence that the full amount of parking penalties has been deposited for all notices of parking violation issued for the vehicle and any vehicles registered to the registered owner of the immobilized vehicle and that bail has been deposited for all traffic violations of the registered owner that have not been cleared. The requirements in subdivision (c) shall be fully enforced by the immobilizing law enforcement agency on and after the time that the Department of Motor Vehicles is able to provide access to the necessary records. A notice of parking violation issued to the vehicle shall be accompanied by a warning that repeated violations may result in the impounding or immobilization of the vehicle. In lieu of furnishing satisfactory evidence that the full amount of parking penalties or bail, or both, have been deposited that person may demand to be taken without unnecessary delay before a magistrate, for traffic offenses, or a hearing examiner, for parking offenses, within the county in which the offenses charged are alleged to have been committed and who has jurisdiction of the offenses and is nearest or most accessible with reference to the place where the vehicle is immobilized. Evidence of current registration shall be produced after a vehicle has been immobilized. At the discretion of the immobilizing law enforcement agency, a notice to appear for violation of subdivision (a) of Section 4000 may be issued to that person, if the two days immediately following the day of impoundment are weekend days or holidays."

[8]Section 22651 provides in part: "Any peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code; or any regularly employed and salaried employee, who is engaged in directing traffic or enforcing parking laws and regulations, of a city or a county in which a vehicle is located, may remove a vehicle located within the territorial limits in which the officer or employee may act, under any of the following circumstances:

". . . . . . . . . . . . . . . . . . . . . . . .

"(i)(1) When any vehicle, other than a rented vehicle, is found upon a highway or any public lands, or is removed pursuant to this code, and it is known to have been issued five or more notices of parking violation, to which the owner or person in control of the vehicle has not responded within 21 days of citation issuance or 10 days of a notice of delinquent parking violation to the agency responsible for processing notices of parking violation or the registered owner of the vehicle is known to have been issued five or more notices for failure to pay or failure to appear in court for traffic violations for which no certificate has been issued by the magistrate or clerk of the court hearing the case showing that the case has been adjudicated or concerning which the registered owner's record has not been cleared pursuant to Chapter 6 (commencing with Section 41500) of Division 17, the vehicle may be impounded until that person furnishes to the impounding law enforcement agency all of the following:

"(A) Evidence of his or her identity.

"(B) An address within this state at which he or she can be located.

"(C) Satisfactory evidence that all parking penalties due for the vehicle and any other vehicle registered to the registered owner of the impounded vehicle, and all traffic violations of the registered owner, have been cleared."

person, in writing, or by telephone. (§ 40200.7.)[9] In the first stage, either the processing or the issuing agency conducts an investigation into any circumstances described in writing by the contestant and sends a written report to the contestant. (§ 40215, subd. (a)(1).)[10] In the second stage, if the contestant is dissatisfied with the outcome of this administrative investigation, he or she can obtain an "administrative review" upon request, provided that he or she first deposits the amount of the parking penalty. (§ 40215, subd. (a)(2).)[11] Those demonstrably unable to make the full deposit must still be allowed to proceed. (§ 40200.7.) The administrative review gives the contestant the option of a "personal conference" before an "examiner." (§ 40215, subd. (b).)[12] In the third stage, a contestant dissatisfied with the

[9]While section 40205 directs the processing agency to proceed under section 40215, section 40200.7 contains parallel, applicable provisions. Section 40200.7 provides: "For a period of 21 days from the issuance of the notice of parking violation or 10 days from the mailing of the notice of delinquent parking violation, a person may request review by the processing agency, or at the discretion of the processing agency, by the issuing agency, of the issuance of a notice of parking violation or a notice of delinquent parking violation by written request, telephone, or in person. If the person is dissatisfied with the results of the initial review, the person may contest through an administrative review process the notice of parking violation or notice of delinquent parking violation, by depositing with the processing agency by the 15th day following the mailing to that person of the results of the processing agency's administrative investigation, the full amount of the parking penalty and a written explanation of the reason for contesting the parking violation. The processing agency shall provide, through administrative policy, a procedure for contesting notices of parking violations and notices of delinquent parking violations for persons who can provide verifiable and substantial proof of their inability to deposit the full amount of the parking penalty. If a vehicle has been immobilized or impounded for unpaid parking violations, the processing agency shall, provided that the vehicle remains under the control of the immobilizing or impounding agency, permit the registered owner of the vehicle to contest the parking violations related to the seizure of that vehicle without requiring the deposit of the parking penalties."

[10]Section 40215, subdivision (a)(1), provides: "The processing agency shall either investigate with its own records and staff or request that the issuing agency investigate the circumstances of the citation with respect to the contestant's written explanation of reasons for contesting the parking violation. If, based upon the results of that investigation, the processing agency is satisfied that the violation did not occur or that the registered owner was not responsible for the violation, the processing agency shall cancel the notice of parking violation and make an adequate record of the reasons for canceling the notice. The processing agency shall mail the results of the investigation to the person who contested the notice of parking violation or the notice of delinquent parking violation."

[11]Section 40215, subdivision (a)(2), provides: "If the person contesting a notice of parking violation or notice of delinquent parking violation is not satisfied with the results of the investigation provided for in paragraph (1) and wishes to request an administrative review, the person shall, within 15 days of the mailing of the results of the investigation, deposit the amount of the parking penalty and request an administrative review."

[12]Section 40215, subdivision (b) provides: "Administrative review procedure described in paragraph (2) of subdivision (a) shall consist of the following:

"(1) The person requesting an administrative review shall indicate to the processing agency his or her election for a review by mail or personal conference.

"(2) If the person requesting a hearing is a minor, that person shall be permitted to appear at a hearing or admit responsibility for a parking violation without the necessity of the

examiner's written decision can obtain "de novo" judicial review by filing a timely appeal from the decision. (§ 40230.)[13] The contestant is entitled to a refund of the penalty deposit if the court decision is favorable to the contestant. (§ 40230, subd. (b).)

---

appointment of a guardian. The processing agency may proceed against that person in the same manner as if that person were an adult.

"(3) The administrative review shall be conducted before an examiner designated to conduct the review by the issuing agency's governing body or chief executive officer.

"In addition to any other requirements of employment, an examiner shall demonstrate those qualifications, training, and objectivity prescribed by the issuing agency's governing body or chief executive as are necessary and which are consistent with the duties and responsibilities set forth in this article. The examiner's continued employment, performance evaluation, compensation, and benefits shall not be directly or indirectly linked to the amount of fines collected by the examiner.

"(4) The officer or person authorized to issue a notice of parking violation shall not be required to participate in an administrative review. The issuing agency shall not be required to produce any evidence other than the notice of parking violation or copy thereof, and information received from the Department of Motor Vehicles identifying the registered owner of the vehicle. The documentation in proper form shall be considered prima facie evidence of the violation.

"(5) The review shall be conducted in accordance with the written procedure established by the posing [sic] or processing agency which shall ensure fair and impartial review of contested parking violations. The agency's final decision may be delivered personally to the person by the examiner or to the person by first-class mail."

The "posing" agency mentioned in section 40215, subdivision (b)(5), is not otherwise defined in the statute. This is presumably a drafting error reflecting an intended reference to the "issuing" agency.

[13]Section 40230 provides: "(a) Within 20 days after the mailing or personal delivery of the final decision described in subdivision (b) of Section 40215, the contestant may seek review by filing an appeal to be heard by the justice or municipal court, where the same shall be heard de novo, except that the contents of the processing agency's file in the case shall be received in evidence.

A copy of the notice of parking violation shall be admitted into evidence as prima facie evidence of the facts stated therein.

A copy of the notice of appeal shall be served in person or by first-class mail upon the processing agency by the contestant. For purposes of computing the 20-day period, Section 1013 of the Code of Civil Procedure shall be applicable.

"(b) The fee for filing the notice of appeal shall be twenty-five dollars ($25). The court shall request that the processing agency's file on the case be forwarded to the court, to be received within 15 days of the request. The court shall notify the contestant of the appearance date by mail or personal delivery. The court shall retain the twenty-five dollar ($25) fee regardless of the outcome of the appeal. If the court finds in favor of the contestant, the amount of the fee shall be reimbursed to the contestant by the processing agency. Any deposit of parking penalty shall be refunded by the processing agency in accordance with the judgment of the court.

"(c) The conduct of the appeal under this section is a subordinate judicial duty that may be performed by traffic trial commissioners and other subordinate judicial officials at the direction of the presiding judge of the court.

"(d) If no notice of appeal of the processing agency's decision is filed within the period set forth in subdivision (a), the decision shall be deemed final.

"(e) If the parking penalty has not been deposited and the decision is against the contestant,

*What Process Is Due?*

 Love contends that the prerequisite to administrative review of depositing the penalty constitutes a deprivation of property without due process of law under both the federal and state Constitutions.[14] Love challenges the fairness of the first, investigative stage of the process of contesting a ticket. She does not contend that the hearings involved in the second and third stages are constitutionally deficient.

## A. Does the Law Deprive Love of Property?

We first consider whether Love is deprived of a constitutionally protected property interest. The statute requires her to deposit the amount of the parking penalty with Monterey in order to obtain an administrative hearing. Love characterizes this as a prepayment of the fine.

We observe that the statute summarized above does not expressly provide for refund or reimbursement of the penalty deposit short of a judicial decision favoring the contestant. Nor does the statute specify when an administrative review must be held after it is requested or when a decision must be delivered. (*Tyler, supra,* 34 Cal.App.4th at pp. 785-786.) However, the administrative review procedure is required to be "fair." (§ 40215, subd. (b)(5).) We construe this to require promptness of the processing agency in conducting an administrative review and in refunding a penalty deposit if the contestant prevails in administrative review. (See *Tyler, supra,* at p. 785.) Courts are obliged to construe statutes as constitutional when such construction is reasonable, although this does not authorize a judicial rewrite of a statute contrary to the legislative intent. (Cf. *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826-827, 830 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) It would be unfair for the agency to retain a penalty deposit if the contestant prevails in administrative review. The statute implies as much by expressly providing for reimbursement of the deposit if the contestant prevails after judicial review. Thus, the statute converts the deposit into a payment only if the contestant is unsuccessful.

Under this construction of the statute, the contestant parts with his or her money for a relatively short time, subject to refund. Pursuant to the California Supreme Court decision in *Brooks* v. *Small Claims Court* (1973) 8 Cal.3d

the processing agency shall, after the decision becomes final, proceed to collect the penalty pursuant to Section 40220."

[14]The Fourteenth Amendment to the federal Constitution provides in part: ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

Article I, section 7, subdivision (a), of the California Constitution provides in part: "A person may not be deprived of life, liberty, or property without due process of law . . . ."

661 [105 Cal.Rptr. 785, 504 P.2d 1249], we must conclude that this procedure constitutes a constitutional deprivation of property. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

*Brooks* considered a similar deposit requirement. A defendant who wished to appeal a small claims judgment was required to either deposit the amount of the judgment with the court clerk or file an undertaking in that amount. (8 Cal.3d at pp. 664-665.) *Brooks* concluded that this requirement constituted a taking of property, reasoning as follows. "The first opportunity for representation by counsel arises at the trial de novo after appeal. But the appeal is conditioned on the filing of an undertaking or the depositing of money in lieu thereof. If the defendant should secure an undertaking or bond [citation] from a corporate surety [citation], he would be deprived of the nonrefundable premium. Further, additional collateral is often required in order to qualify for a bond; although this can be recovered if defendant prevails on appeal, he is nevertheless deprived of its use in the meantime. Under *Sniadach* v. [*Family Finance Corp.* (1969) 395 U.S. 337 (23 L.Ed.2d 349, 89 S.Ct. 1820)] and its progeny ([citations]; *Fuentes* [v. *Shevin* (1972) 407 U.S. 67 (32 L.Ed.2d 556, 92 S.Ct. 1983)]), this of course is a taking. If the defendant instead deposits money in lieu of an undertaking [citation], the same result follows. This deprivation is indeed a taking, in spite of its temporary nature." (*Id.* at p. 667.)

While Monterey questions the continuing relevance of *Brooks* on another point discussed below, Monterey does not dispute that the temporary penalty deposit is a constitutional deprivation of property. *Tyler* reached the same conclusion. "[A] deposit of $250 in payment of the parking penalty is a deprivation of property, albeit temporary, which comes within the purview of the due process clause." (34 Cal.App.4th at p. 783.) We agree.

B. *Does a Balancing Test Apply?*

■ According to Love, a predeprivation hearing is the rule, a postdeprivation hearing is the exception. As *Brooks* summarized *Fuentes* v. *Shevin* (1972) 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983], the United States Supreme Court "overturned the prejudgment replevin laws of Florida and Pennsylvania. The high court reaffirmed the principle that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment, and that these deprivations must be *preceded* by a fair hearing." (8 Cal.3d at p. 667, italics added.)

Love cites other cases in support of this principle, including *United States* v. *Good Real Property* (1993) __ U.S. __ [126 L.Ed.2d 490, 114 S.Ct. 492]

(*Good*). *Good* applied the due process clause of the Fifth Amendment to a federal government seizure of real property due to its connection with a drug crime. *Good* stated: "Our precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property. See [citation]; *Fuentes* v. *Shevin*, 407 U.S. 67, 82 [32 L.Ed.2d 556, 570-571, 92 S.Ct. 1983] (1972); *Sniadach* v. *Family Finance Corp. of Bay View*, 395 U.S. 337, 342 [23 L.Ed.2d 349, 354, 89 S.Ct. 1820] (1969) (Harlan J., concurring); [citation]." (__ U.S. at p. __ [126 L.Ed.2d at p. 500, 114 S.Ct. at p. 498].)

*Good* also stated (__ U.S. at p. __ [126 L.Ed.2d at p. 503, 114 S.Ct. at pp. 500-501): "The right to prior notice and a hearing is central to the Constitution's command of due process. 'The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property . . . .' *Fuentes* v. *Shevin*, 407 U.S., at 80-81 [32 L.Ed.2d at 570].

"We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in ' "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." ' *Id.* at 82 [32 L.Ed.2d at 571] (quoting *Boddie* v. *Connecticut*, 401 U.S. 371, 379 [28 L.Ed.2d 113, 119, 91 S.Ct. 780] (1971)); [citation]. Whether the seizure of real property for purposes of civil forfeiture justifies such an exception requires an examination of the competing interests at stake, along with the promptness and adequacy of later proceedings. The three-part inquiry set forth in *Mathews* v. *Eldridge*, 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893] (1976), provides guidance in this regard. The *Mathews* analysis requires us to consider the private interest affected by the official action; the risk of an erroneous deprivation of that interest through the procedures used, as well as the probable value of additional safeguards; and the Government's interest, including the administrative burden that additional procedural requirements would impose. *Id.*, at 335 [47 L.Ed.2d at 33-34]."

Love criticizes *Tyler* for stating "a new rule which should be disapproved as weakening due process." *Tyler* stated: "The courts have long recognized that in limited cases where prompt action is necessary to protect the public health or welfare, an agency may take property without any advance hearing." (34 Cal.App.4th at pp. 783-784.) Love contends that "limited cases" does not adequately convey the meaning of the term "extraordinary situations" in the following statement we repeat from *Good*. "We tolerate some exceptions to the general rule requiring predeprivation notice and hearing,

but only in ' "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." ' " (__ U.S. at p. __ [126 L.Ed.2d at p. 503, 114 S.Ct. at p. 501].)

Love would like us to impose the "general rule" stated in *Good* without applying the balancing test from *Mathews* v. *Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893] that the court actually applied in *Good*. (__ U.S. at p. __ [126 L.Ed.2d at pp. 503-507, 114 S.Ct. at pp. 501-504].) Monterey urges that the balancing test must be applied. *Mathews* was a case involving the termination of Social Security disability payments. Love cites no United States Supreme Court case after *Mathews* that did not apply the balancing test.

Love is also unable to find support in more recent California Supreme Court authority. In *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], the California Supreme Court introduced a more flexible due process analysis than it used in *Brooks. Skelly* involved the process due a permanent public civil service employee prior to termination by the employer. *Skelly* elaborated at pages 208-209 (italics in original): "Until last year, the line of United States Supreme Court discussions beginning with *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820], and continuing with *Fuentes* v. *Shevin* (1972) 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983], and the line of California decisions following *Sniadach* and *Fuentes* adhered to a rather rigid and mechanical interpretation of the due process clause. Under these decisions, every significant deprivation—permanent or merely temporary—of an interest which qualified as 'property' was required under the mandate of due process to be *preceded* by notice and a hearing absent 'extraordinary' or 'truly unusual' circumstances. (*Fuentes* v. *Shevin, supra,* 407 U.S. 67, 82, 88, 90-91 [32 L.Ed.2d 556, 570-571, 574-576]; *Bell* v. *Burson* (1971) 402 U.S. 535, 542 [29 L.Ed.2d 90, 96, 91 S.Ct. 1586]; *Boddie* v. *Connecticut* (1971) 401 U.S. 371, 378-379 [28 L.Ed.2d 113, 119-120, 91 S.Ct. 780]; *Adams* v. *Department of Motor Vehicles* (1974) 11 Cal.3d 146, 155 [113 Cal.Rptr. 145, 520 P.2d 961, 64 A.L.R.3d 803]; *Brooks* v. *Small Claims Court* (1973) 8 Cal.3d 661, 667-668 [105 Cal.Rptr. 785, 504 P.2d 1249]; *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 547 [96 Cal.Rptr. 709, 488 P.2d 13]; *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 277 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; *McCallop* v. *Carberry* (1970) 1 Cal.3d 903, 907 [83 Cal.Rptr. 666, 464 P.2d 122].) These authorities uniformly held that such hearing must meet certain minimum procedural requirements including the right to appear personally before an impartial official, to confront and cross-examine adverse witnesses, to present favorable evidence and to be represented by counsel. (*Brooks* v. *Small Claims Court, supra,* 8 Cal.3d at pp.

667-668; *Rios* v. *Cozens* (1972) 7 Cal.3d 792, 798-799 [103 Cal.Rptr. 299, 499 P.2d 979], vacated *sub nom. Dept. Motor Vehicles of California* v. *Rios* (1973) 410 U.S. 425 [35 L.Ed.2d 398, 93 S.Ct. 1019], new dec., *Rios* v. *Cozens* (1973) 9 Cal.3d 454 [107 Cal.Rptr. 784, 509 P.2d 696]; see also *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 267-271 [25 L.Ed.2d 287, 298-301, 90 S.Ct. 1011].)

"However, as we noted a short time ago in *Beaudreau* v. *Superior Court* (1975) 14 Cal.3d 448 [121 Cal.Rptr. 585, 535 P.2d 713], more recent decisions of the high court have regarded the above due process require-ments as being somewhat less inflexible and as not necessitating an eviden-tiary trial-type hearing at the preliminary stage in every situation involving a taking of property. Although it would appear that a majority of the members of the high court adhere to the principle that some form of notice and hearing must precede a final deprivation of property (*North Georgia Finishing, Inc.* v. *Di-Chem, Inc.* (1975) 419 U.S. 601, 606 [42 L.Ed.2d 751, 757, 95 S.Ct. 719]; *Goss* v. *Lopez* (1975) 419 U.S. 565, 579 [42 L.Ed.2d 725, 737-738, 95 S.Ct. 729]; *Mitchell* v. *W. T. Grant Co.* (1974) 416 U.S. 600, 611-612 [40 L.Ed.2d 406, 415-416, 94 S.Ct. 1895]; *Arnett* v. *Kennedy* [1974] 416 U.S. 134, 164 [40 L.Ed.2d 15, 39, 94 S.Ct. 1633], (concurring opn., Justice Powell), p. 178 [40 L.Ed.2d pp. 46-47] (concurring and dissenting opn., Justice White), p. 212 [40 L.Ed.2d pp. 66-67] (dissenting opn., Justice Marshall)), nevertheless the court has made clear that 'the *timing* and *content* of the notice and *the nature of the hearing* will depend on an appropriate accommodation of the competing interests involved.' (*Goss* v. *Lopez, supra,* 419 U.S. 565, 579 [42 L.Ed.2d 725, 737], italics added; see also *Mitchell* v. *W. T. Grant Co., supra,* 416 U.S. at pp. 607-610 [40 L.Ed.2d at pp. 413-415]; *Arnett* v. *Kennedy, supra,* 416 U.S. at pp. 167-171 [40 L.Ed.2d at pp. 40-43], (concurring opn., Justice Powell), p. 188 [40 L.Ed.2d pp. 52-53] (concurring and dissenting opn., Justice White).) In balancing such 'competing interests involved' so as to determine whether a particular procedure permitting a taking of property without a *prior* hearing satisfies due process, the high court has taken into account a number of factors." *Skelly* went on to list various factors. (15 Cal.3d at p. 209.)

Love argues that this discussion in *Skelly* was dictum and that it overgen-eralized the rationale of what it called the "more recent decisions of the high court." She contends that each of those cases is distinguishable for involving a claim of competing interests. We need not replicate Love's analysis of these older cases. Five months after *Skelly* was decided, the United States Supreme Court developed the *Mathews* balancing test, which it later applied in varying contexts. We find guidance in these later cases. While *Skelly* did not perfectly predict the three-part inquiry later employed by *Mathews*, it accurately recognized the evolution of a more flexible due process analysis.

In *Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552 [150 Cal.Rptr. 129, 586 P.2d 162], the California Supreme Court quoted as follows from *Mathews* (with internal quotation marks and citations omitted): "[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . [D]ue process is flexible and calls for such procedural protections as the particular situation demands. . . . Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected." (*Id.* at p. 561.) *Civil Service Assn.* involved the process due a civil service employee prior to a short-term disciplinary suspension.

Love cites four post-*Mathews* cases that she contends did not employ its balancing test. (*Jones* v. *Preuit & Mauldin* (11th Cir. 1987) 822 F.2d 998 [attachment]; *N.L.R.B.* v. *E.D.P. Medical Computer Systems, Inc.* (2d Cir. 1993) 6 F.3d 951 [garnishment under Federal Debt Collection Procedure Act]; *In re Bank of San Marino* (1985) 167 Cal.App.3d 247 [213 Cal.Rptr. 602] [court approval of sale of assets of liquidated bank]; *Trihedron Internat. Assurance, Ltd.* v. *Superior Court* (1990) 218 Cal.App.3d 934 [267 Cal.Rptr. 418] (*Trihedron*).) *Trihedron* is the only one with any factual similarity. A foreign insurer complained about a statute requiring it either to obtain "authority to transact insurance in California or to post a bond sufficient to secure payment of a final judgment before the insurer can file any pleading in an action instituted against it. [Fn. omitted.]" (218 Cal.App.3d at p. 940.) In concluding that the insurer was not denied due process, the court relied on the cases cited in the first paragraph quoted above from *Skelly*, without relying on more recent decisions. (*Id.* at pp. 946-947.) This discussion in *Trihedron* does not require us to forego application of the *Mathews* balancing test.

Two post-*Mathews* United States Supreme Court cases support application of the balancing test to the circumstances of this case.

*Dixon* v. *Love* (1977) 431 U.S. 105 [52 L.Ed.2d 172, 97 S.Ct. 1723] (*Dixon*) involved the constitutional adequacy of procedures for suspending or revoking the Illinois license of a driver with repeated convictions of traffic offenses. A license could be administratively suspended or revoked without a prior hearing if the driver had accumulated enough convictions of a specified seriousness. (*Id.* at pp. 107-110 [52 L.Ed.2d at pp. 178-179].) Since the licensee was entitled to an administrative hearing after suspension or revocation, "[t]he only question" in *Dixon* was "one of timing" of the hearing. (*Id.* at p. 112 [52 L.Ed.2d at p. 180].) The court stated: "This case thus presents an issue similar to that considered only last Term in *Mathews* v. *Eldridge*, 424 U.S. 319, 333 [47 L.Ed.2d 18, 32] (1976), namely, 'the

extent to which due process requires an evidentiary hearing prior to the deprivation of some type of property interest even if such a hearing is provided thereafter.' " (*Ibid.*) The court proceeded to employ the *Mathews* balancing test in concluding that the administrative procedure was constitutional. (*Id.* at pp. 112-115 [52 L.Ed.2d at pp. 179-182].) The court noted: "The present case is a good illustration of the fact that procedural due process in the administrative setting does not always require application of the judicial model." (*Id.* at p. 115 [52 L.Ed.2d at pp. 181-182].)

*Mackey* v. *Montrym* (1979) 443 U.S. 1 [61 L.Ed.2d 321, 99 S.Ct. 2612] (*Mackey*) considered the constitutionality of mandatory administrative suspension of the Massachusetts license of a driver who refused a breath test after being arrested for driving under the influence of intoxicating liquor. Upon receiving a police report of a driver's refusal to take a breath test, the Registrar of Motor Vehicles was required to suspend the driver's license. (*Id.* at p. 6 [61 L.Ed.2d at pp. 326-327].) The driver was entitled to an immediate postsuspension hearing upon request. (*Id.* at p. 7 [61 L.Ed.2d at p. 327].) As in *Dixon*, ". . . the sole question presented is the appropriate timing of the legal process due a licensee." (*Id.* at p. 11 [61 L.Ed.2d at p. 330].) The court applied the *Mathews* balancing test in concluding that the administrative procedure was constitutional. (*Id.* at pp. 10-19 [61 L.Ed.2d at pp. 329-335].)

*Tyler* relied on *Dixon* and *Mackey*, among other cases, in concluding that the *Mathews* balancing test was applicable to this penalty deposit prerequisite to an administrative hearing on a traffic ticket. (34 Cal.App.4th 777, 784-785.) In light of this precedent, we reject Love's argument that this balancing test is inapplicable.

Love further contends that, according to *Good*, the balancing test is designed to identify only those extraordinary situations justifying a postdeprivation hearing. While *Good* does appear to so indicate, we understand this "general rule" to apply to federal government seizures of real property in anticipation of court proceedings. As quoted above from *Dixon*, the judicial model does not always apply to administrative procedures. Depending on the nature of the private interest affected, " 'the ordinary principle, established by' " United States Supreme Court decisions, is " 'that something less than an evidentiary hearing is sufficient prior to adverse administrative action.' *Mathews* v. *Eldridge*, 424 U.S. at 343 [47 L.Ed.2d at 38]." (*Dixon, supra,* 431 U.S. at p. 113 [52 L.Ed.2d at p. 180]; cf. *Mackey, supra,* 443 U.S. at p. 13 [61 L.Ed.2d at p. 331].)

### C. *The Balancing Test Applied*

#### 1. *Identification of Private Interest*

"The first step in the balancing process mandated by *Eldridge* is identification of the nature and weight of the private interest affected by the official action challenged." (*Mackey, supra*, 443 U.S. at p. 11 [61 L.Ed.2d at p. 330].) The private interest affected by the statute here is Love's use of $275 for the period of time between her request for administrative review and the resulting administrative decision. As noted above, the statute does not clearly indicate when the deposit should be refunded if the contestant prevails in administrative review. However, as we have construed the statute to contemplate a prompt refund, the "deprivation" is a temporary one. (*Tyler, supra*, 34 Cal.App.4th at p. 785.) "The duration of any potentially wrongful deprivation of a property interest is an important factor in assessing the impact of official action on the private interest involved." (*Mackey, supra*, 443 U.S. at p. 12 [61 L.Ed.2d at p. 331].)

*Tyler* concluded, ". . . the amount of money imposed as a parking penalty ($250) is not so great as to render the deprivation a serious loss . . . ." (*Tyler, supra*, 34 Cal.App.4th at p. 785.) Monterey contends that the penalty deposit is a mere "inconvenience" to Love, who is well able to afford it. *Brooks* rejected a similar contention. "It is immaterial that a [person] can afford to be deprived of his property . . . . Denial of due process affects the rich as well as the poor." (8 Cal.3d at p. 670.) As Love accurately points out, "there are a lot of people to whom $250 is a substantial amount of money." We believe that the minimum process due for parking citations does not depend on the wealth of the citee.

We observe that the relative significance and weight of the private interest become more apparent when contrasted to the government interest at stake. We conclude that this deprivation is less substantial than suspension of a driver's license at issue in *Mackey* and *Dixon*. It is also less substantial than the deprivation that occurs when an illegally parked vehicle is towed. (See *Scofield* v. *City of Hillsborough* (9th Cir. 1988) 862 F.2d 759, 762-763, and cases there cited.) It is somewhat more substantial than the $5, $10, or $15 service fee charged to automobile dismantlers and dealers who do not submit timely paperwork to the Department of Motor Vehicles regarding transfer of title to vehicles. *Escondido Imports, Inc.* v. *Department of Motor Vehicles* (1983) 145 Cal.App.3d 834 [193 Cal.Rptr. 772] characterized these fees as "relatively insignificant." (*Id.* at p. 839.)

#### 2. *Identification of Public Interest*

The public or governmental interest at stake here is also less substantial than that involved in *Mackey* and *Dixon*. *Dixon* explained: "the substantial

public interest in administrative efficiency would be impeded by the availability of a pretermination hearing in every case. Giving licensees the choice thus automatically to obtain a delay in the effectiveness of a suspension or revocation would encourage drivers routinely to request full administrative hearings. See *Mathews* v. *Eldridge*, 424 U.S., at 347 [47 L.Ed.2d at 40-41]. Far more substantial than the administrative burden, however, is the important public interest in safety on the roads and highways, and in the prompt removal of a safety hazard." (431 U.S. at p. 114 [52 L.Ed.2d at p. 181].) The majority in *Mackey* also invoked public safety as the state interest at stake. It explained, ". . . the very existence of the summary sanction of the statute serves as a deterrent to drunken driving." (443 U.S. 1, 18 [61 L.Ed.2d 321, 334].)[15]

The public safety rationale does not apply with equal force to the statute in issue here. While we can imagine a parking violation that might endanger members of the public, it is usually not the common violation of parking in a space for too long. Unlike towing an illegally parked vehicle, citing the vehicle does not immediately ameliorate any hazard it poses, although citations may deter future violations.

We consider other possible public purposes for requiring a deposit of the penalty before affording a contestant an administrative review. Monterey contends the requirement serves the purpose of promoting uniformity and consistency in processing tickets. We believe that the statute can be uniformly and consistently applied whether or not contestants are required to deposit the penalty before administrative review.

One apparent purpose of the deposit requirement is to get the money into the hands of the government sooner, thereby ensuring prompt payment of the penalty. This rationale has previously been approved. Federal law requires mine operators to deposit into escrow penalty assessments prior to an adversarial, evidentiary hearing before an administrative law judge. (*B & M Coal* v. *Office of Surface Min. Reclamation* (7th Cir. 1983) 699 F.2d 381, 386; *Blackhawk Mining Co., Inc.* v. *Andrus* (6th Cir. 1983) 711 F.2d 753, 757; *Graham* v. *Office of Surface Min. Reclam. & Enforc.* (3d Cir. 1983) 722 F.2d 1106, 1111 [82 A.L.R.Fed. 203].)[16]

*Tyler* discounted this purpose. It noted that when a ticket is uncontested, the violator is sent a notice of delinquency and is given 10 days to pay the

---

[15]A dissent by four justices in *Mackey* questioned how public safety was served by suspending licenses only of drunk drivers who refuse breath tests and not of those who take them. (443 U.S. at pp. 25-26 [61 L.Ed.2d at pp. 339-340].)

[16]We recognize differences in the administrative penalty procedure for mines. The operator is afforded a predeposit opportunity for an assessment conference. If the operator succeeds after making a penalty deposit, the deposit is returned with interest. (E.g., *Blackhawk Mining*

penalty. (34 Cal.App.4th at p. 786.) The court said that the governmental interest in prompt payment was weak, because "[t]he County has no legitimate interest in obtaining the parking penalties from contestants more promptly than from noncontestants." (*Ibid.*)

We question this premise, since it appears that contestants may in some cases have more time to deposit the penalty than noncontestants have to pay the penalty. (See §§ 40202, 40206, 40200.7.) In this case, Love was given 21 days to either pay the penalty or request administrative review. She was not required to deposit the penalty to obtain the first-stage investigation. The investigation was not completed for almost four weeks. As it happened, Love was not required to deposit the penalty in order to obtain administrative review until almost two months after receiving the citation. In other words, depending on the facts, contested tickets may be paid later than uncontested tickets. In our view, it is a legitimate public interest to obtain prompt payment of parking penalties.

We regard as common knowledge the proposition asserted by amicus curiae City and County of San Francisco (San Francisco) that "[p]arking fines are a significant source of revenue for cities and counties throughout the state."[17] (Evid. Code, § 452, subd. (g).) Love concedes "the governmental interest in collecting fines due the government." However, she contends that this purpose could be served without requiring a penalty deposit. She observes that municipalities have other enforcement mechanisms for unpaid penalties, including withholding vehicle registration or driver's license renewal and impounding or immobilizing vehicles. Love overlooks that none

*Co., Inc.* v. *Andrus, supra,* 711 F.2d at p. 756.) These differences do not distinguish the public interest served by a penalty deposit requirement.

[17]We granted leave to San Francisco to file an amicus curiae brief for itself and the following 45 California cities: Alameda, Anaheim, Baldwin Park, Bellflower, Berkeley, Burlingame, Camarillo, Capitola, Carlsbad, Chico, Cudahy, Del Rey Oaks, Dixon, Fresno, Glendale, Greenfield, Hayward, King City, Lafayette, Long Beach, Los Alamitos, Los Altos, Marina, Milpitas, Napa, Nevada City, Orinda, Oxnard, Redlands, Redondo Beach, San Bruno, San Buenaventura, San Diego, San Jose, San Luis Obispo, Santa Ana, Santa Clara, Seal Beach, South El Monte, South Lake Tahoe, Stanton, Sunnyvale, Tiburon, West Hollywood, Yreka.

San Francisco also contends that effective and credible enforcement of parking laws improves the quality of urban life. San Francisco asserts that it issued 2,303,706 notices of parking violations and collected $44,066,083 in parking fines in the fiscal year 1993-1994. One third of the citations were for expired meters and another third were for vehicles parked where they interfered with street cleaning.

San Francisco implicitly seeks judicial notice of these assertions, which are unsupported by the record. We decline this implicit request. Without any documentary basis, we are unable to determine that these assertions are of reasonably indisputable accuracy. (Evid. Code, § 452, subd. (h); *Whispering Pines Mobile Home Park, Ltd.* v. *City of Scotts Valley* (1986) 180 Cal.App.3d 152, 162 [225 Cal.Rptr. 364].) As this court explained in *California Assn. for Safety Education* v. *Brown* (1994) 30 Cal.App.4th 1264 [36 Cal.Rptr.2d 404], amici curiae must take the appellate record as they find it. (*Id.* at pp. 1274-1275.)

of these methods obtains such prompt payment as the penalty deposit. Some require the government to wait months to collect.

Love alternatively faults the penalty deposit requirement for not addressing the real problem of those who simply ignore parking citations. As just explained, there are other statutory mechanisms for reaching such scofflaws.

A second principal purpose of the deposit requirement is to discourage frivolous and dilatory challenges and conserve scarce administrative resources. (*Tyler, supra,* 34 Cal.App.4th at p. 787; *Blackhawk Mining Co., Inc.* v. *Andrus, supra,* 711 F.2d at p. 757; *Graham* v. *Office of Surface Min. Reclam. & Enforc., supra,* 722 F.2d at p. 1111.) Love does not dispute that the penalty deposit tends to serve this purpose. Instead, Love complains that the statutory scheme has the effect of deterring legitimate claims as well. In support of this contention, Love asks us to take judicial notice that from July 1, 1993, through June 30, 1994, under the new statutory scheme, only 96,000 out of 2,3000,000 parking citations were contested in San Francisco. This stands in contrast to 467,000 out of 2,3000,000 parking citations that were contested in San Francisco the prior year under the earlier statutory scheme.

We decline this request for judicial notice. Love does not provide the newspaper article on which it is based. As we have previously observed (in fn. 17, *ante,* p. 581), without any documentary basis, we are unable to determine that such assertions are of reasonably indisputable accuracy.

We question the extent to which the deposit requirement will deter legitimate challenges. It costs no more to pay the ticket than to challenge it. Anyone able to pay the penalty can afford to challenge it. If Love is concerned about those financially unable to pay the deposit, we have noted that the statute requires implementation of a procedure allowing contests in such circumstances.[18]

We conclude that the penalty deposit prerequisite serves two important government purposes, prompt collection of fines and deterrence of dilatory and frivolous challenges to parking tickets. These interests at least counterbalance, if not outweigh, the private interest in retaining a parking penalty until after an adversary administrative review.

3. *Risk of Erroneous Deprivation*

The third factor to balance is the risk of an erroneous deprivation of the private property. Of course, the Constitution cannot and does not guarantee

[18]Love does not appear to be challenging the waiver procedure allowing indigents to contest citations.

governmental determinations free of error. (*Mackey, supra,* 443 U.S. at p. 13 [61 L.Ed.2d at p. 331].) "[W]hen prompt postdeprivation review is available for correction of administrative error, we have generally required no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be." (*Ibid.*) "The specific dictates of due process must be shaped by 'the risk of error inherent in the truthfinding process as applied to the generality of cases' rather than the 'rare exceptions.' *Mathews* v. *Eldridge, supra,* at 344 [47 L.Ed.2d at 39]." (*Mackey, supra,* 443 U.S. at p. 14 [61 L.Ed.2d at p. 332].)

Love argues that the risk of error in the investigative first stage was high, because it was conducted by the same agency that issued the citation. Love raises the prospect of institutional bias. Here the issuing agency apparently conducted the investigation, although the statute does permit an investigation by the processing agency instead.

*Good* explained: "The purpose of an adversary hearing is to ensure the requisite neutrality that must inform all governmental decisionmaking. That protection is of particular importance here, where the Government has a direct pecuniary interest in the outcome of the proceeding. [Fn. omitted.]" (__ U.S. at p. __ [126 L.Ed.2d at p. 504, 114 S.Ct. at p. 502].) This observation does not go so far as to invalidate either imposition of penalties by an administrative agency or review by the agency of penalties it has imposed. There is no broad constitutional "rule that the members of an administrative agency may not investigate the facts, institute proceedings, and then make the necessary adjudications." (*Withrow* v. *Larkin* (1975) 421 U.S. 35, 53 [43 L.Ed.2d 712, 727, 95 S.Ct. 1456] [challenging Wisconsin medical licensing board].)

Officers issuing parking citations presumably have expertise in spotting parking violations and a professional detachment about issuance, thus minimizing erroneous citations. (*Tyler, supra,* 34 Cal.App.4th at p. 786.) *Tyler* concluded that the risk of error was minimized in the investigative stage of review because, in Alameda County, the contestant's "written explanation is reviewed by a superior officer within the sheriff's department, not the person who wrote the ticket." (*Ibid.*) Love correctly contends that approval of that procedure does not validate different types of investigation.

Love argues that nothing in the statute prohibits the very officer who issued the ticket from conducting the investigation. We agree that this scenario might occur, but it did not happen here. Ordinarily, a facial

constitutional challenge cannot be based on a statute's hypothetical application to facts not before the court. (*Tobe* v. *City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) Another official signed the "Notice of Administrative Review Finding" in this case. It is not a violation of due process that another employee of the same agency conducts the investigation into the validity of a parking citation. (Cf. *B & M Coal* v. *Office of Surface Min. Reclamation, supra,* 699 F.2d at p. 386.) *Good* does not mandate a presumption that co-employees are so partial to each other's work as to be unable to fairly review it. Indeed, the fairness of administrative adjudicators is presumed until the contrary is shown. (*Withrow* v. *Larkin, supra,* 421 U.S. at pp. 47, 55 [43 L.Ed.2d at pp. 723-724, 728].) The law does not require, at the preliminary, investigative stage, a neutral arbiter in the sense of someone unaligned with the issuing agency. Love has no complaint about the neutrality of the arbiter who conducts the second-stage administrative review that will promptly follow the penalty deposit.

Monterey represented that of the 197 parking citations issued by Monterey between July 1 and December 31, 1993, Monterey canceled 111 or 56 percent following the first stage of investigation. Monterey asserts that this shows the fairness of the investigation. Love asserted at oral argument that this shows that the risk of deprivation is high.

We have already acknowledged the government interest in generating revenue from parking tickets. We do not believe that this interest inherently promotes bias favoring the validation of questionable citations.

Contributing to the fairness of the investigative stage is that it affords citees a preliminary opportunity to advance an adversary position. Even if the citee does not have the opportunity to speak contemporaneously with the issuing officer, the notice of parking violation spells out the violation, including a reference to the code violated, and the time and location of the violation. (§ 40202, subd. (a).) Unless the citee has abandoned the vehicle, the citee receives contemporaneous notice of the charged violation. This allows the citee an opportunity to locate witnesses and document the circumstances. The citee who wishes to contest the citation may respond in writing with his or her version of the violation. Nothing prohibits the citee from including sworn statements by witnesses, photographs, and other documentary evidence.

Love argues that this investigation is not a hearing and cannot be construed to be a hearing, or the Legislature would not have provided for a second hearing. The issue, however, is not what the Legislature meant by the words "investigation" and "administrative review," the issue is whether the procedure described is constitutional.

Love suggests that this procedure will result in erroneous deprivations in several common cases, such as when the vehicle was loaned or sold or when visibility of a sign or curb marking is impaired by darkness or another vehicle. Considering the type of showing a citee can make in writing, we believe that Love exaggerates the advantage a citee might gain by making a personal appearance in the investigative stage. Establishing a parking violation is generally not a complex proposition. Moreover, the statute specifically allows the registered owner to avoid liability by presenting evidence of a bona fide sale or transfer. (§ 40210, subds. (a), (b).)[19]

*Tyler* and San Francisco suggest that the penalty deposit requirement is no different than the earlier statutory scheme. *Tyler* stated: "Even under the previous system, parking violators were required to deposit the amount of bail before challenging the parking ticket in court. (§ 40519 . . . .)"[20] (34 Cal.App.4th at p. 787.) Love vigorously disputes that the prior law required

---

[19]Section 40210 provides in part: "(a) If the affidavit of nonliability is returned with evidence that the registered owner served has made a bona fide sale or transfer of the vehicle and has delivered possession thereof to the purchaser prior to the date of the alleged violation, the processing agency shall obtain verification from the department that the registered owner has complied with Section 5602.

"(b) If the registered owner has complied with Section 5602, the processing agency shall cancel the notice of delinquent parking violation with respect to the registered owner."

[20]Section 40519 provides in part: "(a) Any person who has received a written notice to appear for an infraction may, prior to the time at which the person is required to appear, make a deposit and declare the intention to plead not guilty to the clerk of the court named in the notice to appear. The deposit shall be in the amount of bail established pursuant to Section 1269b of the Penal Code, together with any assessment required by Section 42006 of this code or Section 1464 of the Penal Code, for the offense charged, and shall be used for the purpose of guaranteeing the appearance of the defendant at the time and place scheduled by the clerk for arraignment and for trial, and to apply toward the payment of any fine or assessment prescribed by the court in the event of conviction. The case shall thereupon be set for arraignment and trial on the same date, unless the defendant requests separate arraignment.

"(b) Any person who has received a written notice to appear may, prior to the time at which the person is required to appear, plead not guilty in writing in lieu of appearing in person. The written plea shall be directed to the court named in the notice to appear and, if mailed, shall be sent by certified or registered mail postmarked not later than five days prior to the day upon which appearance is required. The written plea and request to the court or city agency shall be accompanied by a deposit consisting of the amount of bail established pursuant to Section 1269b of the Penal Code, together with any assessment required by Section 42006 of this code or Section 1464 of the Penal Code, for that offense which amount shall be used for the purpose of guaranteeing the appearance of the defendant at the time and place set by the court for trial and to apply toward the payment of any fine or assessment prescribed by the court in the event of conviction. Upon receipt of the plea and deposit, the case shall be set for arraignment and trial on the same date, unless the defendant requests separate arraignment. Thereafter, the case shall be conducted in the same manner as if the defendant had appeared in person, had made his or her plea in open court, and had deposited that sum as bail. The court or the clerk of the court shall notify the accused of the time and place of trial by first-class mail postmarked at least 10 days prior to the time set for the trial. Any person using

a deposit of the penalty. She contends that it was merely an option to avoid two court appearances. We do not pursue this comparison further, since the challenge here is to the present statutory scheme.

### D. *Conclusion*

We conclude, balancing all the *Mathews* factors discussed above, that the investigative first stage is a sufficiently fair and reliable procedure to afford the process constitutionally due prior to the temporary deprivation involved in depositing the penalty for a parking citation. The citation gives the citee an opportunity to gather evidence contemporaneous with the charged violation. In requesting an investigation, the citee has an opportunity to present his or her case in writing with any documentary and photographic evidence relevant to the investigation. A presumably impartial investigator reviews the citee's contentions in determining the validity of the citation. It is only after this procedure that the citee is required to deposit the penalty in order to obtain further administrative and judicial review. The successful contestant is entitled to a prompt refund of the penalty deposit. We agree with *Tyler* "that the statutory scheme for contesting parking tickets does not violate due process requirements." (34 Cal.App.4th at p. 787.)

The trial court properly denied Love a preliminary injunction and a writ of mandate. Since Love's individual claims lack merit, we have no occasion to consider the propriety of class relief.

### Disposition

The judgment is affirmed.

Wunderlich, J., and Mihara, J., concurred.

---

this procedure shall be deemed to have waived the right to be tried within the statutory period."